UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ALEX UNDREA SPEIGHT,                                                                    PLAINTIFF

V.                                                               CIVIL ACTION NO. 2:21-CV-52-KS-RPM

COMMISSIONER OF
SOCIAL SECURITY,                                                                       DEFENDANT

## REPORT AND RECOMMENDATION

### I.     INTRODUCTION

On April 21, 2021, plaintiff Alex Undrea Speight ("Speight") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the defendant Commissioner of Social Security ("Commissioner") of his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Doc. [1].

### II.    Procedural History

On July 26, 2019, Speight filed for SSI. Doc. [14], at 16. The Social Security Administration ("Administration") denied his claim initially and upon reconsideration. *Id.*, at 91–110. Thereafter, Speight attended a hearing conducted by an Administrative Law Judge ("ALJ") on September 29, 2020. *Id.*, at 58–90, 133.  On November 4, 2020, the ALJ ruled that Speight was not entitled to SSI. *Id.*, at 13–25. Speight then filed a timely appeal to the Appeals Council, which denied his request for review, and the appeal, on March 2, 2021. *Id.*, at 5–9. This action followed. Doc. [1].

### III.  Relevant Facts

### A. General

Though represented by counsel at the administrative level, Speight's medical records are sparse. Doc. [14]. Concerning his pre-2019 records, Speight self-reports a 1972 clavicle surgery, tonsillectomy, and stiches in his left middle finger. *Id.*, at 340, 355, 357. He also tore his meniscus during a car collision in 2013. *Id.*, at 37, 69–70, 301, 340, 355, 357. However, he did not have surgery to repair the tear. *Id.*, at 70–71, 340.

Later, on October 9, 2019, Speight sustained an 8 cm laceration to his right leg while using a chainsaw to cut tree limbs. Doc. [14], at 300–1. Upon examining Speight at the hospital, Rhonda Thomas, NP determined that the laceration required sterilization and sutures. *Ibid.* No further injury, however, was observed. *Ibid.* Receiving crutches and a walking boot, Speight was released on that same date. *Id.*, at 308–9.

### B. Relevant Medical Opinions

#### i.  Sallie Giblin, MD

On September 7, 2019, Sallie Giblin, MD ("Dr. Giblin") performed a consultative exam on Speight. Doc. [14], at 283–89. She observed that Speight could undertake several physical activities with ease: squatting and rising, sitting and standing, tandem walking, walking on heels and toes, and "stand[ing] and hop[ping] on one foot bilaterally." *Id.*, at 287. Furthermore, she observed that he had a full range of motion; full strength in all extremities, including his thoracic and lumbar spinal regions; could walk long distances without assistance; was not significantly limited with regard to lifting/carrying weight, bending, stooping, crouching, squatting, reaching, grasping, handling, fingering, and feeling; and suffered from no relevant visual, communicative, or workplace environmental limitations. *Ibid.* She also observed that Speight suffered from

elevated blood pressure. *Id.*, at 283–84; 288–89. Finally, while Speight reported 8/10 knee pain and wore a knee brace, Dr. Giblin observed that he did not appear to be in acute distress. *Id.*, at 284.

On September 9, 2019, Speight went sent for shoulder, back, and knee X-rays, which were performed as part of his consultative examination. Doc. [14], at 290–94, 316–118. After reviewing the shoulder X-rays, Andrew T. Smyth, MD concluded that there were "no bony or articular abnormalities" in Speight's "[i]nternal and external [shoulder] rotation." *Id.*, at 292, 318. Reviewing Speight's knee and back X-rays, Lindsey Allred, MD ("Dr. Allred") detected no acute fractures, dislocation, soft tissue swelling, or joint effusion. *Id.*, at 291, 293, 316–17. Nevertheless, observing marginal osteophytosis at the patellofemoral compartment, Dr. Allred concluded that Speight suffered from mild osteoarthritis in his right knee. *Id.*, at 293, 316. With regard to Speight's back, Dr. Allred observed mild multilevel degenerative disc disease ("DDD") with mild to severe hypertrophy at L4–L5 and L5–S1. *Id.*, at 317.

### ii.    Disability Determination Services Physicians

On October 15, 2019, Donald Faucett, MD ("Dr. Faucett") reviewed the available medical records and formed his own medical opinion. Doc. [14], at 92–99; 20 C.F.R. § 416.913(a)(2). He determined that Speight suffered from two medically-determinable severe impairments: (i) asthma and (ii) DDD. Doc. [14], at 95. Speight's subjective symptoms of pain and fatigue were consistent, he opined, with the objective medical evidence. *Ibid.* Dr. Faucett also identified Speight's physical abilities. *Id.*, at 96. While opining that Speight could only occasionally lift and carry 50 pounds, he continued that Speight could frequently lift and carry up to 25 pounds. *Ibid.* Furthermore, Speight could stand, walk, or sit for about six hours in an 8-hour workday as well as push and pull without limitation. *Ibid.* Dr. Faucett further opined that Speight could occasionally climb ramps or

stairs but should never climb ladders, ropes, or scaffolds. *Ibid.* Dr. Faucett also opined that Speight should avoid concentrated exposure to extreme temperatures, wetness, and humidity. *Id.*, at 97. However, he opined that Speight should avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation. *Ibid.* Dr. Faucett concluded that Speight was capable of medium work and, thus, not disabled. *Id.*, at 98–99.

After Speight sought reconsideration, Thomas Jeffcoat, MD ("Dr. Jeffcoat") reviewed the available medical records and formed his own medical opinion on January 29, 2020. Doc. [14], at 101–10. Concurring with Dr. Faucett, Dr. Jeffcoat opined that Speight suffered from the above-described severe impairments. *Id.*, at 105. Dr. Jeffcoat also concurred with Dr. Faucett's findings about Speight's subjective symptoms, physical capabilities, and limitations. *Id.*, at 106–8. Ultimately, Dr. Jeffcoat concluded that Speight was capable of medium work and, thus, not disabled. *Id.*, at 105.

### C. Additional Evidence

After the medical opinions of record were issued, Speight submitted additional medical records. *See* Doc. [14], at 336–60. Medical records from April 4, 2020 reflect that Speight, who is right-handed, received hospital treatment after suffering a serious injury to the pointer finger on his left hand. *Id.*, at 65, 343–44. In particular, he suffered a "laceration involving the plantar aspect of the distal left index proximal phalanx distally with extension to the PIP joint." *Id.*, at 349. Multiple tiny osseous fragments were observed "adjacent to the laceration." *Ibid.* Skin thickening was also observed. *Ibid.* In light of this injury, Speight cannot independently bend his finger. *Id.*, at 82. However, he can, for example, "put" his finger under his thumb to create an okay sign. *Ibid.*

In mid- to late-2020, Speight visited Joe Ward, MD ("Dr. Ward"). Doc. [14], at 30–32, 352–60. Dr. Ward observed that Speight suffered from "unspecified" joint pain, essential hypertension,

4

varicose veins in his right leg causing inflammation, and obesity. *Id.*, at 356. As treatment, Dr. Ward prescribed Meloxicam for joint pain; lisinopril-hydrochlorothiazide for hypertension; and compression socks for varicose veins. *Id.*, at 30–32, 358.

### IV. ALJ's Opinion

In her opinion, the ALJ made the following findings of fact. First, the ALJ assumed *arguendo* that Speight has not engaged in substantial gainful activity since July 26, 2019. Doc. [14], at 18. The ALJ further found that Speight suffered from three severe medical impairments: DDD, osteoarthritis, and obesity, but she concluded that his 2020 finger injury and hypertension were not severe impairments. *Ibid.* Next, the ALJ concluded that Speight did not suffer from a severe impairment or combination of impairments that meets or medically equals the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*, at 19.

Turning to Speight's residual functional capacity ("RFC"), the ALJ accounted for all of Speight's medical records, including his additional records. Doc. [14], at 21. She concluded that Speight was capable of performing "medium work" with some additional limitations. *Id.*, at 19–23. In particular, Speight could frequently climb ramps/stairs, stoop, kneel, and crouch, but only occasionally climb ladders, ropes, or scaffolds. *Ibid.* Furthermore, he should avoid exposure to extreme temperatures, wetness, humidity, and more than occasional exposure to pulmonary irritants. *Ibid.* Thereafter, the ALJ concluded that Speight could not return to his past relevant work. *Id.*, at 23.

At step five, the ALJ found that Speight was an individual "closely approaching retirement age" because he was 61 years old at filing. *Id.*, at 23. Furthermore, the ALJ found that Speight had a high school education. *Ibid.* Thereafter, considering his age, education, work experience, and RFC, the ALJ concluded that a significant number of jobs, around 776,000, existed in the national

economy that Speight could perform, including as an assembler, off bearer, and picker-packer. *Id.*, at 24. Thus, the ALJ concluded that Speight was not "disabled." *Id.*, at 23–24.

## V. Standard of Review

Under 42 U.S.C. § 405(g), the Court's review is limited to two inquiries: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, —— U.S. ——, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quotation omitted). It is "more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quotation omitted). Finally, "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002)).

## VI. Five-Step Process Generally

A claimant is "disabled" as defined in the SSA if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a sequential, five-step approach to determine whether a claimant is disabled. The steps include: "(1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment

prevents the claimant from performing any other substantial gainful activity." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 271–72).

The burden of proof is on the claimant at the first four steps. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). At the fifth step, the burden of proof shifts to the Commissioner to establish the existence of other available substantial gainful employment that the claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301–2 (5th Cir. 1987). If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that he could not perform the alternative work identified. *Id.* at 1302. Throughout the process, the ultimate burden of establishing disability remains with the claimant. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). "A finding at any step that the claimant is not disabled ends the inquiry." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citing *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

## VII. ANALYSIS

### A. Introduction

On appeal, Speight argues that the ALJ committed reversible erred by finding Dr. Jeffcoat's opinion to be persuasive. Doc. [15], at 4–6. According to Speight, Dr. Jeffcoat's medical opinion is unpersuasive because it predated Speight's filing of "material" additional medical records. *Id.* (citing Doc. [14], at 336–60). Speight believes that Dr. Jeffcoat's failure to consider this evidence, and the ALJ's reliance on his opinion, "greatly prejudiced" Speight. *Ibid.* Expanding on "great prejudice," Speight specifically identifies 2020 medical records reflecting a finger injury, varicose veins, hypertension, obesity, and unspecified joint pain. *Id.*, at 6. With regard to new limitations, Speight specifies that his finger injury will impair his ability to lift/carry and wearing compression socks–to treat varicose veins–will impair his ability to stand and walk. *Ibid.* Speight does not identify any other physical limitations flowing from his additional medical records. *Id.*, at 1–8.

7

Speight also does not, and cannot, claim that the ALJ failed to account for the additional medical records. Doc. [14], at 21; [15].

In light of the above, Speight appears to argue that Dr. Jeffcoat's medical opinion is stale. However, Speight has not identified, and the Court has not found, Fifth Circuit caselaw directly on point. Nevertheless, in two sister circuits, a robust body of caselaw recognizes that a medical opinion may be stale and, therefore, not constitute substantial evidence. *See*, *e.g.*, *Chapo v. Astrue*, 682 F.3d 1285, 1292–93 (10th Cir. 2012); *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 469–70 (W.D.N.Y. 2018). While it is not clear whether the staleness doctrine is foreclosed by existing Fifth Circuit caselaw, *Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021), or readily cognizable under the new regulations, 20 C.F.R. § 416.920c(c)(5), the Court need not take a position. Under either theory, Speight's claim fails.[1]

### B. Staleness

Under the staleness doctrine, a medical opinion predating deterioration in a claimant's overall physical condition may not constitute substantial evidence. *Biro*, 335 F. Supp. 3d at 469–70 (finding medical opinion stale that was issued five years before ALJ's decision because it did not account for significant changes in claimant's physical condition). However, a medical opinion is not stale simply because it is based on an incomplete record, *Camille v. Colvin*, 104 F. Supp. 3d 329, 343–34 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016), or has age, *Andrews v. Berryhill*, No. 17–CV–6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018). To the contrary, for a medical opinion to be stale, the claimant must demonstrate that the additional

---

[1] To the extent Speight argues that SSR 96–6p applies, the Court disagrees. Under SSR 96-6p, an ALJ must obtain an updated medical opinion after receiving new medical records if he believes that it is necessary. *See* SSR 96–6p, 1996 WL 374180, at *3–4 (July 2, 1996). However, SSR 96–6p explicitly ties this proposition to Step 3 of the ALJ's analysis, not his RFC determination. *See*, *e.g.*, *Ihde v. Colvin*, 270 F. Supp. 3d 956, 966 (W.D. Tex. 2017); *Johnson v. Saul*, No. 3:20–CV–144–BH, 2020 WL 6876225, at *11 (N.D. Tex. Nov. 23, 2020). Since Speight only makes this argument in the RFC context, his reliance, if any, on SSR 96–6p is misplaced. Doc. [15].

medical records marked an obvious, significant deterioration in his overall physical condition. *Chapo*, 682 F.3d at 1292–93 (medical opinion was stale due to later obvious and significant changes in the claimant's medical record); *Fambo v. Comm'r of Soc. Sec.*, 474 F. Supp. 3d 603, 608 (W.D.N.Y. 2020) (medical opinion is not stale if consistent with record as a whole). Nevertheless, if a medical opinion is found to be stale, the ALJ effectively failed to rely on a medical opinion to reach his RFC determination. *Fambo*, 474 F. Supp. 3d at 608. Such a finding may, therefore, be quite significant because the ALJ must develop and rely upon, at least in part, a persuasive medical opinion in all but a narrow class of cases. *See*, *e.g.*, *Nelson v. Comm'r of Soc. Sec.*, No. 3:20–CV–452–CWR–RPM, 2021 WL 6426620, at *4 (S.D. Miss. Dec. 1, 2021), *adopted*, No. 3:20–CV–452–CWR–RPM, 2022 WL 110271 (S.D. Miss. Jan. 11, 2022).

Here, Speight's additional medical records do not reflect an obvious and significant deterioration in his overall physical condition. To begin with, Dr. Jeffcoat's medical opinion was issued only ten months before the ALJ's decision and he accounted for nearly all of Speight's medical records. Doc. [14], at 13–25, 101–10. Turning to those additional records, while Speight testified that he could no longer bend his finger, he also testified that he is right-handed, can "presently" lift and carry 40 to 50 pounds, pick up and place groceries in a cart, cook "good meals," dress, bathe, and shower without assistance. *Id.*, at 65, 73, 75–76, 82. Likewise, Speight's postinjury medical records do not reflect ongoing finger treatment, such as subsequent surgeries or infection. *Id.*, at 355–56. Turning to his varicose veins, Speight does not identify medical records establishing the effect, if any, that the *condition* has on his ability to work. Indeed, neither Speight nor his attorney discussed this condition at his hearing. *See*, *e.g.*, *Rouselle v. Commissioner of Social Security*, No. 1:20–CV–01640–NYW, 2021 WL 4307115, at *8 (D. Colo. Sept. 22, 2021).

There is no indication that the condition results in pain, either.[2] With regard to the remainder of his additional records—e.g. hypertension and obesity, Speight has failed to identify why these records reflect a change or deterioration in his overall physical condition. Doc. [14], at 354–60. More generally, Dr. Jeffcoat's medical opinion is substantially similar to the limitations and findings in the record as a whole. *Judith S. v. Comm'r of Soc. Sec.*, No. 20–CV–812S, 2022 WL 167533, at *5 (W.D.N.Y. Jan. 19, 2022). In particular, his opinion finds extensive support in the objective medical evidence, Speight's hearing testimony, and the other medical opinions of record. Doc. [14].

In light of the above, it is not obvious that Speight's additional medical records reflect a significant change in his overall physical condition warranting a new medical opinion. *Nicholas P. S. v. Saul*, No. CV 20–2360–JWL, 2021 WL 2711172 (D. Kan. July 1, 2021). Indeed, Speight's additional records suggest, *at most*, a slight deterioration in his overall physical condition. *See*, *e.g.*, *Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015) (observing that a merely discernible medical change does not, without more, render a medical opinion stale). For these reasons, Dr. Jeffcoat's opinion is not stale.

### C. Medical Opinion Persuasiveness

Next, the Court addresses Speight's claim that substantial evidence did not support the ALJ's finding that Dr. Jeffcoat's medical opinion was persuasive. Doc. [15], at 4–6. Since Speight filed for SSI "on or after March 27, 2017," the ALJ was required to apply the new regulations. 20 C.F.R. § 416.920c(a). Through the new regulations, the Administration revised the procedures and standards for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule. *Revisions to Rules Regarding the Evaluation of Medical Evidence*

---

[2] Speight's argument that compression socks used to treat varicose veins will render him disabled is both highly speculative and without merit.

("*Revisions to Rules*"), 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). As such, ALJs are "no longer required to give controlling weight" to the opinions of treating physicians. *Pearson v. Comm'r of Soc. Sec.*, No. 1:20–CV–166–HSO–RPM, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021) (citation omitted), *adopted*, No. 1:20–CV–166–HSO–RPM, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021). Instead, ALJs are required to consider the persuasiveness of medical opinions from different medical sources. 20 C.F.R. § 416.920c(b)(2). In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) "other factors that tend to support or contradict" the opinion. 20 C.F.R. § 416.920c(c).

Here, substantial evidence supported the ALJ's finding that Dr. Jeffcoat's medical opinion was persuasive. First, as the ALJ observed, Dr. Jeffcoat's medical opinion was consistent with Speight's abnormal X-ray results showing that he suffered from mild DDD and mild osteoarthritis as well as Speight's other treatment notes. Doc. [14], at 22, 291, 293, 316–17. Likewise, as the ALJ points out, Speight's yard work, including use of a chainsaw and a reciprocator saw, along with his self-reported ability to cook, grocery shop, and undertake household chores reflect a "somewhat normal level of daily activities." *Id.*, at 21. Finally, Dr. Jeffcoat's opinion was largely consistent with the other medical opinions of record. *See*, *e.g.*, *id.*, at 101–10, 283–89. *See also* 20 C.F.R. § 404.1513(a)(2). For these reasons, substantial evidence supported the ALJ's finding that Dr. Jeffcoat's medical opinion was persuasive.

### D. New Consultative Examination

While a claimant bears the ultimate burden of proving his disability by establishing a physical or mental impairment, *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991); 20 C.F.R. § 416.916, an ALJ is dutybound to "fully and fairly" develop the facts relevant to a disability claim, *Carey v.*

*Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (citation omitted); 20 C.F.R. § 416.945(a)(3). "An ALJ's failure to fulfill this duty is not reversible error unless the claimant is prejudiced." *Webster*, 19 F.4th at 720 (citing *Ripley*, 67 F.3d at 557).While an ALJ typically has "discretion to order a consultative examination[,]" *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989), he *must* obtain a consultative examination to fully and fairly develop the record only if "the record establishes that such an examination is *necessary* to enable . . . [him] to make the disability decision." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (emphasis in original) (quoting *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987)).

Here, the ALJ expressly considered the evidence of record. Doc. [14], at 21. Notwithstanding his subjective claims of extreme pain, Speight testified that over-the-counter anti-inflammatory medication relieved his pain symptoms. *Id.*, at 72. His objective medical records reflect a 2013 torn meniscus diagnosis, but this injury did not prevent him from working until at least 2017. *Id.*, at 37, 80–81, 98. His other objective medical records, including 2019 X-rays of his knee, are largely unremarkable or reflect mild limitations, which the ALJ included in her RFC determination. *Id.*, at 21. Furthermore, an in-person consultative examination reflects that he retains fairly substantial physical capabilities, *Id.*, at 70–72, 283–89, 316–17, and the other only medical opinions of record only support a finding of non-disability, *id.*, at 92–110, 283–89. *See also* 20 C.F.R. § 404.1513(a)(2). Moreover, Speight's testimony and other additional medical records reflect that his finger injury–to his nondominant hand–had a marginal impact on his overall physical capabilities. *Id.*, at 82. With regard to varicose veins, Speight neither raised the issue at his hearing nor requested an additional consultative examination prior to this appeal. *Compare Chunn v. Berryhill*, No. 3:18–CV–720–TSL–MTP, 2019 WL 8228994, at *5 (S.D. Miss. Dec. 11, 2019), *with Ruthie J. v. Kijakazi*, No. 1:20–CV–00067–BU, 2021 WL 3777131, at *6 (N.D. Tex.

Aug. 5, 2021). Likewise, Speight's varicose veins diagnosis came in the form of an isolated treatment note. *Clary v. Barnhart*, 214 F. App'x 479, 481 (5th Cir. 2007). Finally, Speight has not explained the materiality of the other additional medical records; the materiality thereof is also not self-evident in light of the entire record. Doc. [14]. For these reasons, the ALJ could make a disability determination on the record before her and did not need to order a new consultative examination. *Webster,* 19 F.4th at 720.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the Commissioner's decision should be affirmed and Speight's Complaint dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which

there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 6th day of July 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE