IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ALEX UNDREA SPEIGHT                                               PLAINTIFF

VS.                                                CIVIL ACTION NO. 2:21-cv-52-KS-RPM

KILOLO KIJAKAZI,
Acting Commissioner of Social Security                            DEFENDANT

ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION
AND DISMISSING CASE WITH PREJUDICE, ETC.

This cause is before the Court on Petition of Plaintiff Alex Undrea Speight ("Speight") filed in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the denial by the Defendant Commissioner of Social Security ("Commissioner") of his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Doc [1].

The Court has considered the Report and Recommendation of the Magistrate Judge [17], the Plaintiff's Brief [15], the Defendant's Brief [16] and the record herein and does hereby find as follows:

## I. PROCEDURAL HISTORY

On July 26, 2019, Speight filed for SSI. Doc. [14], at 16. The Social Security Administration ("Administration") denied his claim initially and upon reconsideration. *Id.*, at 91–110. Thereafter, Speight attended a hearing conducted by an Administrative Law Judge ("ALJ") on September 29, 2020. *Id.*, at 58–90, 133. On November 4, 2020, the ALJ ruled that Speight was not entitled to SSI. *Id.*, at 13–25. Speight then filed a timely appeal to the Appeals Council, which denied his request for review, and the appeal, on March 2, 2021. *Id.*, at 5–9. This action followed. Doc. [1].

## II. RELEVANT FACTS

Though represented by counsel at the administrative level, Speight's medical records are sparse. Doc. [14]. Concerning his pre-2019 records, Speight self-reports a 1972 clavicle surgery, tonsillectomy, and stiches in his left middle finger. *Id.*, at 340, 355, 357. He also tore his meniscus during a car collision in 2013. *Id.*, at 37, 69–70, 301, 340, 355, 357. However, he did not have surgery to repair the tear. *Id.*, at 70–71, 340.

Later, on October 9, 2019, Speight sustained an 8 cm laceration to his right leg while using a chainsaw to cut tree limbs. Doc. [14], at 300–1. Upon examining Speight at the hospital, Rhonda Thomas, NP determined that the laceration required sterilization and sutures. *Ibid.* No further injury, however, was observed. *Ibid.* Receiving crutches and a walking boot, Speight was released on that same date. *Id.*, at 308–9.

## III. RELEVANT MEDICAL OPINIONS

### i. Sallie Giblin, MD

On September 7, 2019, Sallie Giblin, MD ("Dr. Giblin") performed a consultative exam on Speight. Doc. [14], at 283–89. She observed that Speight could undertake several physical activities with ease: squatting and rising, sitting and standing, tandem walking, walking on heels and toes, and "stand[ing] and hop[ping] on one foot bilaterally." *Id.*, at 287. Furthermore, she observed that he had a full range of motion; full strength in all extremities, including his thoracic and lumbar spinal regions; could walk long distances without assistance; was not significantly limited with regard to lifting/carrying weight, bending, stooping, crouching, squatting, reaching, grasping, handling, fingering, and feeling; and suffered from no relevant visual, communicative, or workplace environmental limitations. *Ibid.* She also observed that Speight suffered from

elevated blood pressure. *Id.*, at 283–84; 288–89. Finally, while Speight reported 8/10 knee pain and wore a knee brace, Dr. Giblin observed that he did not appear to be in acute distress. *Id.*, at 284.

On September 9, 2019, Speight was sent for shoulder, back, and knee X-rays, which were performed as part of his consultative examination. Doc. [14], at 290–94, 316–118. After reviewing the shoulder X-rays, Andrew T. Smyth, MD concluded that there were "no bony or articular abnormalities" in Speight's "[i]nternal and external [shoulder] rotation." *Id.*, at 292, 318. Reviewing Speight's knee and back X-rays, Lindsey Allred, MD ("Dr. Allred") detected no acute fractures, dislocation, soft tissue swelling, or joint effusion. *Id.*, at 291, 293, 316–17. Nevertheless, observing marginal osteophytosis at the patellofemoral compartment, Dr. Allred concluded that Speight suffered from mild osteoarthritis in his right knee. *Id.*, at 293, 316. With regard to Speight's back, Dr. Allred observed mild multilevel degenerative disc disease ("DDD") with mild to severe hypertrophy at L4–L5 and L5–S1. *Id.*, at 317.

## IV. DISABILITY DETERMINATION SERVICES PHYSICIAN

On October 15, 2019, Donald Faucett, MD ("Dr. Faucett") reviewed the available medical records and formed his own medical opinion. Doc. [14], at 92–99; 20 C.F.R. § 416.913(a)(2). He determined that Speight suffered from two medically-determinable severe impairments: (i) asthma and (ii) DDD. Doc. [14], at 95. Speight's subjective symptoms of pain and fatigue were consistent, he opined, with the objective medical evidence. *Ibid.* Dr. Faucett also identified Speight's physical abilities. *Id.*, at 96. While opining that Speight could only occasionally lift and carry 50 pounds, he continued that Speight could frequently lift and carry up to 25 pounds. *Ibid.* Furthermore, Speight could stand, walk, or sit for about six hours in an 8-hour workday as well as push and pull without limitation. *Ibid.* Dr. Faucett further opined that Speight could occasionally climb ramps or

3

stairs but should never climb ladders, ropes, or scaffolds. *Ibid.* Dr. Faucett also opined that Speight should avoid concentrated exposure to extreme temperatures, wetness, and humidity. *Id.*, at 97. However, he opined that Speight should avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation. *Ibid.* Dr. Faucett concluded that Speight was capable of medium work and, thus, not disabled. *Id.*, at 98–99.

Thomas Jeffcoat, MD ("Dr. Jeffcoat") also reviewed the available medical records and formed his own medical opinion on January 29, 2020. Doc. [14], at 101–10. Concurring with Dr. Faucett, Dr. Jeffcoat opined that Speight suffered from the above- described severe impairments. *Id.*, at 105. Dr. Jeffcoat also concurred with Dr. Faucett's findings about Speight's subjective symptoms, physical capabilities, and limitations. *Id.*, at 106–8. Ultimately, Dr. Jeffcoat concluded that Speight was capable of medium work and, thus, not disabled. *Id.*, at 105.

## VI. ISSUE FOR THE COURT

The parties agree that the issue for this Court to determine is whether or not the ALJ erred when she found the opinion of the state agency medical consultant persuasive when the consultant never had the opportunity to review evidence that is material to the determination of Plaintiff's claim. In his Brief the Plaintiff succinctly states the issue that the Court must decide as follows:

> "In this case, the ALJ was persuaded by the opinions of Dr. Jeffcoat
> and Dr. Faucett, who completed a functional capacity review of the
> Plaintiff's file. While the ALJ did not rely on these opinions completely,
> it was stated in the ALJ's decision, "The undersigned finds these opinions
> persuasive because they are generally consistent with and supported by

4

the evidence of record, including the abnormal diagnostic x-rays and treatment records, as discussed above. Generally, the undersigned finds the opinions of the DDS medical consultants more persuasive than Dr. Giblin's opinion, and found Dr. Jeffcoat's opinion at reconsideration more consistent with the whole of the evidence and more persuasive than that of Dr. Faucett at the initial level." (TR 18-19). The record in this case is clear: Dr. Jeffcoat did not have access to all pertinent medical evidence at the time his opinion was formulated. The opinion was formulated by Dr. Jeffcoat on January 29,2020, which would have made it impossible for him to have access to evidence or treatment that would have taken place or that was generated after said date. (TR 101-105). The following citations are illustrative of material medical evidence that he did not have when he formulated his opinions:

> April 4, 2020: 62 y/o M to ed for eval of laceration to left index finger. States he hit it with a grinder now has laceration and states cant move finger and describes deformity that he straightened back. Denies other injuries. This happened about 1 hour prior to arrival. (TR 338)
>
> April 4, 2020: x-ray of finger; indication trauma – severe Injury with grinder (TR 339)
>
> July 29, 2020: Assessment: Pain unspecified joint, essential hypertension, varicose veins on right lower extremity with inflammation…(TR 352). Plan: Pain in unspecified joint: 2. Essential primary hypertension: 3. Varicose veins of right lower extremity with inflammation. Notes: compression socks. (TR352)."

5

## VII. ADDITIONAL EVIDENCE

The Magistrate Judge addressed the additional evidence in his Report and Recommendation. Quoting the Report and Recommendation, the Magistrate Judge lists the additional evidence.

> " After the medical opinions of record were issued, Speight submitted additional medical records. *See* Doc. [14], at 336–60. Medical records from April 4, 2020 reflect that Speight, who is right-handed, received hospital treatment after suffering a serious injury to the pointer finger on his left hand. *Id.*, at 65, 343–44. In particular, he suffered a "laceration involving the plantar aspect of the distal left index proximal phalanx distally with extension to the PIP joint." *Id.*, at 349. Multiple tiny osseous fragments were observed "adjacent to the laceration." *Ibid.* Skin thickening was also observed. *Ibid.* In light of this injury, Speight cannot independently bend his finger. *Id.*, at 82. However, he can, for example, "put" his finger under his thumb to create an okay sign. *Ibid.* In mid- to late-2020, Speight visited Joe Ward, MD ("Dr. Ward"). Doc. [14], at 30–32, 352–60. Dr. Ward observed that Speight suffered from "unspecified" joint pain, essential hypertension, varicose veins in his right leg causing inflammation, and obesity. *Id.*, at 356. As treatment, Dr. Ward prescribed Meloxicam for joint pain; lisinopril-hydrochlorothiazide for hypertension; and compression socks for varicose veins. *Id.*, at 30–32, 358 (Doc.17 pp.4-5).

## XIII. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court's review is limited to two inquiries: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, —— U.S. ——, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quotation omitted). It is "more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quotation omitted). Finally,

"[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002)).

## IX. ANALYSIS

The Court has reviewed the relevancy, the staleness of the medical opinions, the medical opinions persuasiveness, and the need for a new consultative evaluation as addressed by the Magistrate Judge. The Magistrate Judge went through the five step analysis and the Report and Recommendation points out that the ultimate burden establishing disability remains with the Claimant. *Hames v. Hecklar*, 707 f.2d 162, 165 (5th Cir. 1983). Speight specifically identifies 2020 medical records reflecting a finger injury, varicose veins, hypertension, obesity, and unspecified joint pain. He lists new limitations as inability to lift/carry and wearing compression socks to treat varicose veins that he alleges will impair his ability to stand and walk. No other physical limitations are listed. His analysis addressed staleness, medical opinion persuasiveness, and the need for subsequent consultative examination. This Court finds that the allegations of the effect of the new evidence do not overcome the conclusiveness of the record prior to Dr. Jeffcoat's evaluation. Common sense and the record support the Magistrate Judge's findings and this Court concurs with the Magistrate Judge's well- reasoned and common sensical recommendation.
.

## X. CONCLUSION

As requited by 28 U.S.C. §636(b)(1) this Court has conducted an independent review of the entire record and a de novo review of the matter raised by the Objection. For the reasons set forth above this Court concludes that Speight's Objection lacks merit and

should be overruled. The Court further concludes that the Report and Recommendation is an accurate statement of the facts and the correct analysis of the law in all regards. Therefore, the Court accepts, approves, and adopts the Magistrate Judge's factual findings and legal conclusions contained in the Report and Recommendation.

Accordingly, it is Ordered that the United States Magistrate Judge, Robert P. Myers Jr's Report and Recommendation is accepted pursuant to 28 U.S.C. §636(b)(1) and that Speight's claim is DISMISSED WITH PREJUDICE. Any other pending Motions are DENIED AS MOOT.

SO ORDERED this the __30th____ day of September, 2022.

_____s/Keith Starrett_____
UNITED STATES DISTRICT JUDGE